UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| MALIBU MEDIA, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 12-CV-0237 |
| | ) | |
| JOHN DOES 1-11, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**DEFENDANT J. DOE'S (IP ADDRESS 69.140.147.125) COMBINED MOTION TO: (1) PERMIT DEFENDANT TO APPEAR ANONYMOUSLY; (2) VACATE EXPEDITED DISCOVERY ORDER; (3) SEVER DEFENDANTS FOR MISJOINDER; (4) QUASH THE SUBPOENA; OR, IN THE ALTERNATIVE, FOR (5) PROTECTIVE ORDER**

COMES NOW Defendant, J. Doe identified by Plaintiff as IP Address 69.140.147.125, by and through undersigned counsel, and respectfully requests this Honorable Court to: (1) permit Defendant to proceed anonymously; (2) reconsider and vacate its April 11, 2012 Order permitting pre-service expedited discovery  (Doc. No. 6); (3) sever Defendants based on misjoinder; and (4) quash the subpoena served upon Defendant's Internet Service Provider Comcast Cable Holdings LLC ("ISP"), served on April 12, 2012.  In the alternative, Defendant respectfully requests the Court to (5) enter a Protective Order prohibiting any party from publicly disclosing any information relating to Defendant that Plaintiff obtains via the subpoena, and in support thereof states:

1. This Motion is brought within the time period provided in the subpoena issued to Defendant's ISP, pursuant to the Court's April 11, 2012 Order granting Plaintiff leave to serve Rule 45 subpoenas;

2. Defendant has standing to challenge the subpoena because of Defendant's personal interest in the subpoenaed matter, under *Washington v. Thurgood Marshall Acad.*, 230 F.R.D. 18, 21 (D.D.C. 2005);

3. Pursuant to L.CvR. 7(m), counsel for Defendant has attempted to confer with Plaintiff's counsel concerning the relief Defendant seeks herein; and

4. Defendant respectfully requests the Court to grant this Motion and find:

   a. Defendant may appear anonymously in this matter;

   b. In the absence of good cause, the April 11, 2012 Order allowing Plaintiff to serve Rule 45 subpoenas on Defendants' ISPs should be reconsidered;

   c. Defendants suffer from improper joinder; and

   d. In the alternative, Defendant respectfully requests this Court to grant this Motion and enter a protective order to prohibit the disclosure of Defendant's information.

WHEREFORE, the Defendant moves to quash the Rule 45 subpoena and, in reconsideration of the Order, requests the Court to vacate the Order dated April 11, 2012 and sever and dismiss all Defendants.

This, the 16th day of May, 2012.

Respectfully submitted,

S/ Bradford P. Johnson

_____

Bradford P. Johnson, Esq.
D.C. Bar No. 385757
Johnson Law Group Intl., PLLC
1321 Pennsylvania Avenue, SE

Washington, DC 20003
Telephone:      202-544-1515
Fax:                866-446-3240
Email:             bjohnson@jlgi.com

## CERTIFICATE OF COMPLIANCE WITH L.CvR 7(m)

Pursuant to L.CvR. 7(m), counsel for Defendant conferred with Plaintiff's counsel concerning the relief Defendant seeks herein.  Plaintiff's counsel indicated verbally that it would not consent or otherwise stipulate to the relief.

S/ Bradford P. Johnson

_____
Bradford P. Johnson, Esq.
Johnson Law Group Intl., PLLC

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this, the 16th day of May, 2012, a true and correct copy of the foregoing document was served on counsel for Plaintiff, Jon A. Hoppe, via the CM/ECF system.

S/ Bradford P. Johnson

_____
Bradford P. Johnson, Esq.
Johnson Law Group Intl., PLLC

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| MALIBU MEDIA, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **Civil Action No. 12-CV-0237** |
| | ) | |
| JOHN DOES 1-11, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**<u>DEFENDANT J. DOE'S (IP ADDRESS 69.140.147.125) MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDDANT'S COMBINED MOTION TO: (1) PERMIT DEFENDANT TO APPEAR ANONYMOUSLY; (2) VACATE EXPEDITED DISCOVERY ORDER; (3) SEVER DEFENDANTS FOR MISJOINDER; (4) QUASH THE SUBPOENA; OR, IN THE ALTERNATIVE, FOR (5) PROTECTIVE ORDER</u>**

Defendant, J. Doe identified by Plaintiff as IP Address 69.140.147.125, by and through undersigned counsel, respectfully submits this Memorandum of Points and Authorities in support of Defendant's Motion, requesting that this Court: (1) permit Defendant to proceed anonymously; and (2) reconsider and vacate its April 11, 2012 Order permitting pre-service expedited discovery. (Doc. No. 6). In the alternative, Defendant requests that this Court (3) sever Defendants based on misjoinder, and (4) quash the subpoena served upon Defendant's Internet Service Provider Comcast Cable Holdings LLC ("ISP"), served on April 12, 2012. If the Court denies Defendant's Motion to Quash, Defendant requests that, pursuant to Rule 26(c) of the Federal Rules of Civil Procedure, the Court (5) enter a Protective Order prohibiting any party from publicly disclosing any information relating to Defendant that Plaintiff obtains via the subpoena, including, requiring any pleadings filed in this action that contain Defendant's personal information to be redacted and filed under seal to prevent public disclosure.

I.   FACTUAL BACKGROUND

1.   Plaintiff is the media corporation Malibu Media, LLC ("Plaintiff").

2.   Plaintiff is a corporation organized and existing under the laws of California.

3.   Defendant is one of 11 Doe defendants and has been assigned to and identified as 69.140.147.125.

4.   On or about February 10, 2012, Plaintiff filed a Complaint in the United States District Court for the District of Columbia alleging that 11 defendants illegally downloaded Plaintiff's copyrighted pornographic film entitled *Rich Girl Part 2* (Doc. No. 1).

5.   Plaintiff alleges that Defendant illegally downloaded *Rich Girl Part 2* using BitTorrent Software.

6.   Plaintiff is capable of locating each individual Doe Defendant by utilizing geolocation software.

7.   Geolocation software is accurate in tracing IP Addresses to a location, and is readily available to the public.

8.   On April 11, 2012, this Court issued an Order (Doc. No. 6) ("Order") permitting Plaintiff to serve a Rule 45 subpoena on each defendant's internet service provider demanding personal identifying information regarding each defendant, i.e. each defendant's name, address, telephone number, e-mail address, and media access controls address.

9.   On or about April 12, 2012, Plaintiff served Defendant's Internet Service Provider Comcast Cable Holdings LLC ("ISP"), ordering the ISP to produce Defendant's personal identifying information on or before May 28, 2012.

10.  On or about April 20, 2012, Defendant's ISP provided notice that they had received a

subpoena demanding Defendant's personal identifying information.

II. INTRODUCTION

The instant case is part of a systemic effort to build a business model based on weak allegations of copyright infringement and questionable use of the legal system to quickly wrest profit-generating settlements from defendants cowed by the high cost and potential liability of such litigation.  Various courts across the country have skeptically described these for-profit copyright lawsuits, however, Defendant finds the Chief Justice of the U.S. District Court for the District of Nevada Judge Robert Hunt's analysis relevant when describing such suits as Plaintiffs' "attempt to create a cottage industry of filing copyright claims, making large claims for damages and then settling claims for pennies on the dollar." *Democratic Underground*, No. 2:11-cv-01356 (D. Nev. Apr. 14, 2011), Dkt. 94.  Other Courts have also directly addressed these types of cases, excoriating "plaintiffs who file cases with extremely weak infringement positions in order to settle for less than the cost of defense and have no intention of taking the case to trial. Such a practice is an abuse of the judicial system and threatens the integrity of and respect for the courts."  Mem. Op. and Order at 5, *Raylon LLC v. EZ Tag Corp.*, No. 6:09- cv-00357 (E.D. Tex. Mar. 9, 2011), Dkt. 115.

In an explicit demonstration and subsequent repudiation of Plaintiff's for-profit litigation model, Judge Beeler of the U.S. District Court for The Northern District of California, directly rebuked an adult entertainment company plaintiff in an analogous BitTorrent case involving 188 Doe defendants stating in response to an order to show cause:

> [t]he court has no confidence that Plaintiff has been diligent in moving to name and serve defendants, despite its (unsworn) claims to the contrary. For example, Plaintiff's counsel states that he has filed ten other copyright cases involving a large number of Doe defendants.  ECF No. 17 at 4.  The court reviewed the

dockets and noted that the plaintiffs in these cases have not filed proof of service for even a single defendant even though a number of defendants have been identified and dismissed after settling with the plaintiffs. *See, e.g., Media Products, Inc. DBA Devil s Film v. Does 1-1257*, Case No. CV 10-04471 RS (complaint filed on October 4, 2010 and no proof of service filed for any defendant as of July 29, 2011, but four Doe defendants have been dismissed after settling). This pattern holds true in this case too. Here, Plaintiff has not identified or served any of the 1,219 Doe Defendants. However, on May 10, 2011, Plaintiff filed a stipulation dismissing with prejudice a Doe Defendant who settled with Plaintiff. ECF No. 13 at 1. And, on August 18, 2011, Plaintiff filed a stipulation dismissing with prejudice more than thirty Doe Defendants who settled. ECF No. at 1-2. The plaintiffs in these cases appear content to force settlements without incurring any of the burdens involved in proving their cases. And, while the courts favor settlements, "filing one mass action in order to identify hundreds of doe defendants through pre-service discovery and facilitate mass settlement, is not what the joinder rules were established for." *IO Group, Inc. v. Does 1-435*, No. C 10-4382 SI, 2011 WL 445043, at *6 (N.D. Cal. Feb. 3, 2011).

Order Dismiss. Comp. *Patrick Collins, Inc, v. Does 1-1,219* Case 4:10-cv-04468-LB Dkt No. 27 (D. Cal. 2011) 08/29/11.

Most recently, in an identical case to the one before the Court, *K-Beech v. John Does 1-85,* in U.S. District Court for the Eastern District of Virginia, Judge Gibney, Jr., issued a telling Memorandum Order. On October 5, 2011, Judge Gibney, Jr. rejected Plaintiffs "swarm" theory joinder argument, severing all defendants but one. Importantly, Judge Gibney, Jr. also described plaintiff's "litigation strategy," discussed at length herein, and went on to demand that plaintiff show cause as to why plaintiff's conduct did not violate Rule 11 of the Federal Rules of Civil Procedure:

> The Court also finds that Plaintiff should be required to show cause as to why certain conduct does not violate Rule 11 of the Federal Rules of Civil Procedure. The Court currently has 3 similar cases before it, all brought by the same attorney. These suits are virtually identical in their terms but filed on behalf of different film production companies. In all three, plaintiffs sought, and the Court granted, expedited discovery, allowing Plaintiffs to subpoena information from ISPs to identify the Doe Defendants. According to some of the defendants, the plaintiffs then contacted the John Does, alerting them to this lawsuit and their potential liability. Some defendants have indicated that plaintiff has contacted them directly with harassing phone calls, demanding $2,900 in compensation to end litigation. When any of the defendants have filed a motion to dismiss or sever themselves from litigation, however, the plaintiffs have immediately

voluntarily dismissed them as parties to prevent the defendants from bringing their
motions before the Court for resolution.

This course of conduct indicates that the plaintiffs have used the Court as an
inexpensive means to gain the Doe Defendants' personal information and coerce
payments from them.  The plaintiffs have seemingly no interest in actually litigating
these cases, but rather simply have used the Court and the subpoena power to obtain
information to shakedown the John Does … The plaintiffs conduct in these cases
indicate an improper purpose for the suits.

*K-Beech v. John Does 1-8*, Case 3:11-cv00469-JAG (Doc. No. 9), 10/05/11.

Based on the extraordinarily large number of analogous cases, treated in the same or
similar manner by plaintiffs, it has become obvious that such mass-copyright litigation lawsuits
are merely a vehicle "to identify hundreds of Doe defendants through pre-service discovery,"
then, regardless of any consideration of guilt or innocence seek to coerce largely contingent-fee
settlements, sometime though harassing letters and direct phone calls with no real intent to
actually litigate such claims.  This for-profit business model is even more apparent when one
considers the actual number of defendants claimed in such actions versus the astonishingly low
number of actions actually commenced.[1]

Plaintiff, in the present case, equally seeks to take advantage of the threat of a massive
award of statutory damages, attorneys fees, ignorance about defenses, and perhaps most
importantly, the stigma which attaches to defendants when associated with illegally downloading
pornographic films to coerce quick, and profitable contingency-fee settlements.  Unfortunately,
as has been played out in cases across the country, Plaintiff, in pursuit of such efforts, has

---

[1] As of March 2011, more than 136,000 Does claimed as Defendants in such actions, however, the number of actual
copyright infringement actions commenced was less than 100.  See *Wired Magazine s* spreadsheet prepared from
existing federal court data at: http://www.wired.com/images_blogs/threatlevel/2011/03/spreadsheet-fslit-current-
V1.2.01.xls .

disregarded both substantive and procedural safeguards, implemented by federal law to protect potential defendants.

Specifically, Plaintiff has failed to show requisite good cause for jurisdictional discovery, and has misjoined all 11 putative defendants to avoid the cost of appropriately filing individual cases.[2]  Further, Plaintiff's subpoena is facially invalid.  The technology and methods utilized to identify the potential Defendant are unreliable, leading to a significant risk of misidentification. Last, Plaintiff's subpoena also impermissibly subjects Defendant to unwarranted annoyance, embarrassment, and oppression.  Accordingly, this Court's Order (Doc. No. 6) permitting expedited discovery should vacated, defendants must be severed, and the subpoena must be quashed to avoid considerable injustice.  If the Court denies Defendant's request that the Court quash the subpoena, Defendant respectfully requests that the Court issue a Protective Order to shelter Defendant from undue hardship, annoyance, embarrassment, and oppression.

III. LEGAL STANDARDS

A.  STANDING TO CHALLENGE THE SUBPOENA

A party has standing to challenge a subpoena issued to a third party when the party has a personal or proprietary interest in the information sought by the subpoena.  *See Washington v. Thurgood Marshall Acad.*, 230 F.R.D. 18, 21 (D.D.C. 2005).

B.  DISCRETION TO PERMIT DEFEDENT TO APPEAR ANONYMOUSLY

LCvR 5.1(e)(1) and LCvR 11.1 mandate that a party provide both her name and "full residence address" in her first filing with the Court.  However, it is within the discretion of the district court to permit a party to proceed anonymously.  *Yaman v. U.S. Dep't of State,* No. 10-

---

[2]  In this case filing fees alone for each of the 11 putative Defendants. would be approximately $3,850.00.

00818 (JDB), 2011 WL 1837778, at *3 (D.D.C. May 16, 2011); *see United States v. Microsoft*,

56 F.3d 1448, 1464 (D.C. Cir. 1995).

In exercising discretion, this Court has provided a framework for guiding the determination

as to whether a party may be permitted to proceed anonymously. *See, e.g., Yaman*, 2011 WL

1837778, at *4; *Nat'l Ass'n of Waterfront Emp'rs v. Chao*, 587 F. Supp. 2d 90, 99 (D.D.C.

2008) (outlining factors for courts to consider in assessing a plaintiff's request to proceed

under a pseudonym); *Doe #1 v. Von Eschenbach,* No. 06-2131, 2007 WL 1848013, at *2

(D.D.C. June 27, 2007).  In making that determination, the Court is instructed to consider the

following:

> (1)  Whether the justification asserted by the requesting party is merely to avoid the
> annoyance and criticism that may attend any litigation or is to preserve privacy in a
> matter of a sensitive and highly personal nature;
> (2)  Whether identification poses a risk of retaliatory physical or mental harm to the
> requesting party or even more critically, to innocent non-parties;
> (3)  The ages of the persons whose privacy interests are sought to be protected;
> (4)  Whether the action is against a governmental or private party; and,
> (5)  The risk of unfairness to the opposing party from allowing an action against it to
> proceed anonymously.

*Nat'l Ass'n of Waterfront Employers*, 587 F. Supp. 2d at 99.

While this Court has held in a similar case that it will "not consider any motion unless it

is publicly filed," concluding that "[i]ndividuals who subscribe to the internet through ISPs

simply have *no expectation of privacy* in their subscriber information" (emphasis added)[3], this

---

[3] Judge Bates previously ordered that putative defendants could file their motions under seal and the defendants'
identities would remain anonymous, and relying upon Bates' order the Doe Defendants followed his instructions,
filing their motions under seal.  Judge Facciola, who subsequently took over the case, reversed Judge Bates' order
stating that motions to quash that were filed under seal will be filed publicly on February 1, 2012, revealing the
anonymous defendants' identities to the world and, consequently, the Plaintiff seeking such information through a
third party subpoena. *Hard Drive Productions, Inc. v. Does 1-1,495*, No. 1:11-cv-01741 (D.C. Cir. December 21,
2011), Dkt. 18.

District Court has been given judicial notice of an Order issued on March 30, 2012, by the United States District Court for the Northern District of California in *Hard Drive Productions, Inc. v. Does 1-90*, No. 5:11-cv-03825-HRL. *Hard Drive Productions, Inc. v. Does 1-1,495*, No. 1:11-cv-01741 (D. D.C. April 12, 2011), Dkt. 47. Here, the court ruled it "will not assist a plaintiff who seems to have no desire to actually litigate but instead seems to be using the courts to pursue an extrajudicial business plan against possible infringers, *and innocent others caught up in the ISP net*" (emphasis added), noting the fact that internet service providers will not allow a subscriber to open an account without the subscriber's personal information. *Id*.

### C.  JURISIDICTIONAL DISCOVERY

This Court has broad discretion in its resolution of discovery problems and cases before it. *Nu Image, Inc. v. Does 1-23,322*, 2011 U.S. Dist. LEXIS 83293, 3 (D.C. Cir. 2011). *See also Hussain v. Nicholson*, 435 F.3d. 359, 363, 369 U.S. App. D.C. 247 (D.C. Cir. 2006) (citing *In re Multi-Piece Rim Prods. Lib. Litig.*, 653 F.2d 671, 679, 209 U.S. App. D.C. 416 (D.C. Cir. 1981); *see also* Fed. R. Civ. P. 26(b)(2)(C) (requiring the Court the limit discovery when the burden or expense of the proposed discovery outweighs the likely benefit). This District has made clear that its discovery rules include implementing reasonable limits on discovery where the Court has a duty to prevent an undue burden, harassment, and expense of third parties. *Id*.

In *Nu Image, Inc v. Does 1-23,322*, the Court found that plaintiffs are not entitled to take jurisdictional discovery simply because it is requested, but rather, plaintiffs must make an initial demonstration of "good cause," which includes a requisite showing that a plaintiff, "… has at least a good faith belief that such discovery will enable him to show the court has personal jurisdiction over the defendant." 2011 U.S. Dist. LEXIS 83293, at 4. Citing *Caribbean Broad*

*Sys. Ltd v. Cable Wireless PLC*, 148 F.3d 1080, 1090, 331 U.S. App D.C. 226 (D.C. Cir. 1998); see also *Exponential Biotherapies, Inc. v. Houthoff Buruma N.V.*, 638 F. Supp. 2d 1, 11 (D.D.C 2009).  Importantly, "'mere conjecture or speculation' is not enough to justify jurisdictional discovery."  *Id.* Citing *FC Investment Group LC v. IFX Markets Ltd.* 529 F.3d 1087, 1094, 381 U.S. App. D.C. 383 (D.C. Cir. 2008).

Where the privacy concerns of the owners of the affected IPs outweigh the vague benefits claimed by the litigant companies, a request to subpoena a third party should be denied.  *VPR Internationale v. Does 1-1017*, No. 2:2011-cv-02068 (C.D. Ill. Apr. 29, 2011), Dkt. 15.  Where a Canadian adult film company sued more than a thousand unnamed defendants for copyright infringement for disseminating their products through the BitTorrent program, having only the IP addresses used in the offense, the court refused to grant the subpoena requests sought to ascertain the identities of offenders by subpoenaing the relevant contact information, citing lack of proven jurisdiction, since not a single actual person had been named in the suit.  *Id*.  Plainly stated, the court concluded that the expedited *ex parte* discovery was a fishing expedition by means of a perversion of the purpose and intent of Fed. R. Civ. P. 23.[4]  *Id.*

If a Plaintiff seeks to enlist the aid of the court to obtain information through the litigation discovery process so that it can pursue a nonjudicial remedy that focuses on extracting "settlement" payments from persons who may or may not be infringers[5], expedited discovery

---

[4] In its order denying the motion for expedited discovery, the court noted that until at least one person is served, the court lacks personal jurisdiction over anyone. The court has no jurisdiction over any of the Does at this time; the imprimatur of this court will not be used to advance a "fishing expedition by means of a perversion of the purpose and intent" of class actions. *VPR Internationale vs. Does 1-1017*,  No. 2:2011-cv-02068 (C.D. Ill. Apr. 29, 2011).

[5] In fact, where this Court has allowed the issuance of a third party subpoena, the Court was forced to subsequently order the plaintiffs to name and serve defendants or dismiss them, according to Federal Rules of Civil Procedure Rule 4(m); instead of naming defendants, the plaintiffs decided to dismiss all defendants.  *Imperial Enterprises v. Does 1-3,545*, No. 1:11-cv-00529 (D.C. Cir. December 19, 2011), Dkt. 87.

should not been permitted.  *Hard Drive Productions, Inc. v. Does 1-1,495*, No. 1:11-cv-01741 (D.D.C. April 12, 2011), Dkt. 47.

D.  JOINDER

1.       Permissive Joinder

Pursuant to Federal R. Civ. Pro. 20(a)(2), permissive joinder of defendants is proper if: "(A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action."  Expressly, Fed R. Civ. Pro. 20(a)(2) is "designed to promote judicial economy and convenience."  *Hard Drive Productions, Inc. v. Does 1-188*, 2011 U.S. Dist. LEXIS 94319, at 16.  See also *Mosley v. Gen. Motors*, 497 F.2d 1330, 1332-33.  Federal R. Civ. Pro. 20 further provides that upon finding misjoinder of parties, upon motion or upon its own, a court may, at any time, add or drop a party. The Court may also sever any claim against a party.

2.  Discretionary Severance

Even if Federal R. Civ. Pro. 20(a)'s requirements are met, "a District Court must examine whether permissive joinder would comport with the principals of fundamental fairness or would result in prejudice to either side."  2011 U.S. Dist. LEXIS 94319 at 17.  *See also Coleman v. Quaker Oats Company*, 232 F.3d 1271, 1296 (citing *Desert Empire Bank v. Insurance Co. of North America*, 623 F.2d 1371, 1375).  Additionally, under Fed. R. Civ. Pro. 20(b), a District Court is permitted to sever claims or parties where "[i]nstead of making the resolution of [the] case more efficient . . . joinder would instead confuse and complicate the issues for all parties

10

involved." *See, e.g., Wynn v. National Broadcasting Company*, 234 F. Supp. 2d 1067, 1088

(C.D. Cal. 2002) (finding that even where Rule 20 requirements for joinder are satisfied, the

Court may exercise its discretion "to sever for at least two reasons: (1) to prevent jury

confusion and judicial inefficiency, and (2) to prevent unfair prejudice to the [defendants]")

(citing *Coleman*, 232 F.3d at 1296). *Id* at 17.

### 3.  Joinder in BitTorrent Technology Cases and Recent Developments

In 2011 this Court addressed the issue of joinder in a line of similar cases where Judge

Kotelly and Judge Howell found that joinder requirements had been met in cases involving a

mass number of defendants who allegedly downloaded copyright works using BitTorrent

protocol[6]; however, since these decisions, a vast number of District Courts across the country

have addressed identical issues of joinder, and have almost universally rejected the identical

"swarm" theory Plaintiff sets forth in the present case, and this Court's reasoning in its initial

line of decisions.  These courts have properly severed putative defendants for both plaintiffs'

failure to meet permissive joinder requirements under Fed. R. Civ. P. 20(a), and on the grounds

of discretionary severance.  *See e.g. Zero Tolerance Entm t v. Does 1-2,943,* 2011 U.S. Dist.

LEXIS 108099 (N.D. Cal. Sept. 15, 2011) (holding that in light of Plaintiff's uncertainty about the

role of each particular Doe Defendant, and the relationship between Defendants, all Doe

Defendants should be severed); *Bridgeport Music Inc. v. 11C Music 202 F.R.D. 229, 232-33*

(M.D. Tenn. July 25, 2001) (holding permissive joinder would not promote judicial economy

because the court's courtroom could not accommodate all defendants and their attorneys, could

not hold case management conferences, and could not try all plaintiffs claims together); *Hard*

---

[6] *W. Coast Prods. v. Does 1-5,829*, 275 F.R.D. 9, *Donkeyball Movie LLC. v. Does 1-171*, 2011 US Dist. LEXIS 50785, *Maverick Entm t Group Inc. v. Does 2*, 115, 2011 U.S. Dist. LEXIS 51653

11

*Drive Prods. v. Does 1-188,* 2011 U.S. Dist. LEXIS 94319, at 14, (N.D. Cal. Aug. 23, 2011) (granting Doe Defendant's motion to quash and joinder was not proper because evidence did not show Doe Defendants acted in concert, and joinder would result in an unmanageable case); *Diabolic Video Productions*, 2011 U.S. Dist. LEXIS 58351 (N.D. Cal. May 31, 2011) (joinder was improper where plaintiff alleged 2,099 different defendants acted in concert to reproduce plaintiff's copyrighted film on 49 different days using BitTorrent protocol); *Pacific Century International*, 2011 U.S. Dist. LEXIS 73837 (N.D. Cal. July 8, 2011) (finding joinder was improper because the only commonality between copyright infringers of the same work is that each committed the exact same violation of law in the same way); *On the Cheap LLC v. Does 1-5011* (N.D. Cal. Sept. 6, 2011) (finding that joinder was improper because it would not promote judicial efficiency, would violate principals of fundamental fairness, and be prejudicial to defendants); *LaFace Records LLC v. Does 1-38,* 2008 U.S. Dist. LEXIS 14544, 2008 WL 544992 at 1 (rejecting Plaintiff's argument that copyright infringement claims did not arise out of the same transaction, occurrence, or series of transactions … because each defendant used the same ISP as well as the same P2P networks); *Interscope Records v. Does 1-25*, 2004 U.S. Dist. LEXIS 27782, at 2 (holding improper joinder although defendants were alleged to have disseminated the plaintiffs' copyrighted works through the same P2P network); *Elektra Entertainment Group, Inc. v Does 1-9,* 2004 U.S. Dist. LEXIS 23560, 2004 WL 2095581, at 1 (finding the mere use of the same P2P protocol was insufficient to establish that the plaintiff's copyright infringement claims were logically related for purposes of Rule 20(a)(2)); *Fonovisa, Inc. v. Does 1-9,* 2008 U.S. Dist LEXIS 27170, 2008 WL 919701 (finding joinder improper because of the different factual contexts of the alleged infringement for each defendant and absence a showing of any evidence showing joint action by defendants, other than their use of the same P2P network to access

copyrighted recordings); *IO Group v. Does 1-19*, 2010 U.S. Dist. LEXIS 133717, *8-9 (N.D. Cal. Dec. 7, 2010) (holding that the "only factual allegation connecting the defendants", the allegation that they all used the same peer-to-peer network to reproduce and distribute the plaintiff's copyrighted work, was insufficient for joinder of multiple defendants under Rule 20.); *IO Group, Inc. v. Does 1-435*, 2011 U.S. Dist. LEXIS 14123, *15-16 (N.D. Cal. Feb. 3, 2011). *Lightspeed v. Does 1-1,000*, 2011 U.S. Dist LEXIS 35392 (N.D. Ill. March 31, 2011) (plaintiff alleged that the defendants illegally reproduced and distributed its copyrighted works over the Internet through BitTorrent, the court severed defendants because of improper joinder); *Boy Racer v. Does 1-71*, 2011 U.S. Dist. LEXIS 57975 (Grewal, M.J.) (N.D. Cal. May 31, 2011). (Severed for improper joinder based on peer-to-peer architecture identical to BitTorrent protocols); *Boy Racer v. Does 1-52,* 2011 U.S. Dist. LEXIS 58345 (Grewal, M.J.) (N.D. Cal. May 31, 2011).

To properly join other John Doe Defendants, Plaintiff must show that all Defendants either uploaded or downloaded from each one of the other defendants, otherwise defendants are can be severed and dismissed.  In *Patrick Collins, Inc. v. John Does 1-54* the court stated:

> "Plaintiff alleges that the two remaining Defendants "participat[ed] in the BitTorrent swarm with other infringers" but does not claim that John Doe 6 provided data to the former John Doe 12 or vice versa …. [and] alleges no facts that these two particular Defendants shared data with each other, and provides data instead that they were logged on to BitTorrent weeks apart.  "The bare fact that a Doe clicked on a command to participate in the BitTorrent Protocol does not mean that they were part of the downloading by unknown hundreds or thousands of individuals across the country or across the world."

*Patrick Collins, Inc. v. John Does 1-54*, No. 2:11-cv-01602 (D. Ariz. March, 19, 2012), Dkt. 34 (citing *Hard Drive Prods., Inc. v. Does 1–188*, 11 No. CV-11-01566, 2011 WL 3740473, at *13 (N.D. Cal. Aug. 23, 2011)).

If the court concludes there is improper joinder, all Does should be severed and dismissed from the case.[7]  *Malibu Media, LLC v. John Does 1-23, et al.*, No. 1:12-cv-159 – No. 1:12-cv-167 (E.D. Va. April 3, 2012), Dkt. 10; (choosing to consolidate all of the Malibu Media, LLC cases, the court found that all cases suffered from improper joinder, severed and dismissed all Does other than Doe #1 in each, leaving only one defendant from each case or 8 total remaining in Virginia.).

E.  AUTHORITY TO QUASH SUBPOENA AND ISSUE PROTECTIVE ORDER

Pursuant to Rule 45(c)(3), a court must modify or quash a subpoena that "requires disclosure of privileged or other protected matter, if no exception or waiver applies, or subjects a person to an undue burden."  A court may modify or quash a subpoena that, *inter alia*, requires disclosing confidential information.

Moreover, Federal R. Civ. P. 26(c) provides that, "a party or person from whom discovery is sought may move for a protective order where the action is pending … "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including . . . specifying terms . . . for the disclosure [and] limiting the scope of disclosure . . . as to certain matters." Fed. R. Civ. P. 26(c)(1)(B), (D).  Federal R. Civ. P. 26(c)(1), further instructs that court to limit the frequency or extent of discovery otherwise allowed by the Federal Rules of Civil Procedure, or by local rule, if it determinates that … the burden or expense of the proposed discovery outweighs the likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of discovery in resolving the issues.

---

[7] Plaintiff Malibu Media, LLC was the same Plaintiff in each case naming 187 John Doe Defendants in the Eastern District of Virginia.  Currently, Malibu Media, LLC has named 54 John Doe Defendants in this District Court.

14

## IV. ARGUMENT

### A. DEFENDANT HAS STANDING TO CHALLENGE THE SUBPOENA BECAUSE DEFENDANT HAS A PERSONAL INTEREST IN THE SUBPOENAED MATTER

A party has standing to challenge a subpoena issued to a third party when the party has a personal or proprietary interest in the information sought by the subpoena. *See Washington v. Thurgood Marshall Acad.,* 230 F.R.D. 18, 21 (D.D.C. 2005). Here, because the subpoena served on Defendant's ISP seeks Defendant's personal identifying information, Defendant undoubtedly has a "personal interest" in the information sought by the subpoena. Further, if Defendant's personal identifying information is disclosed to Plaintiff, as part of the "business model" discussed herein, Plaintiff will expeditiously seek settlements amounting to thousands of dollars, with no serious intention of naming Defendant, or any other putative defendant, to a lawsuit. It follows, if Defendant has a "personal or proprietary interest" sufficient to pay several thousand dollars under the threat of litigation and public exposure, certainly Defendant has a "personal or proprietary interest" sufficient to object prior to that disclosure. Accordingly, Defendant has standing to challenge the subpoena.

### B. DEFENDANT SHOULD BE PERMITTED TO PROCEED ANONYMOUSLY IN ORDER TO AVOID UNDUE PREJUDICE

The factors set forth above support allowing Defendant to proceed anonymously under the designation of J. Doe's alleged IP Address: 69.140.147.125.

In consideration of the first factor, Defendant's request to appear anonymously is not intended "to merely avoid annoyance or criticism," but rather to "preserve privacy in a matter of a sensitive and highly personal nature." Plaintiff initiated this lawsuit and served

Defendant's ISP with a subpoena seeking confidential and personal identifying information about Defendant.  The personal identifying information requested, precipitately and inappropriately, connects Defendant to allegations of illegally downloading pornography without evidence justifying such a connection.  At this time, the disclosure of Defendant's personal information in connection with illegally downloading pornography should be deemed extremely sensitive and highly personal in nature.  Moreover, Defendant should be permitted to proceed anonymously to preserve, at a minimum, Defendant's right to challenge the subpoena issued to Defendant's ISP without disclosing the very information the subpoena seeks, Defendant's identity.

Next, and in consideration of the second factor, the identification of Defendant poses a substantial risk of harm to Defendant due to the highly sensitive and personal nature of the allegations involving pornography.  Disclosure of Defendant's personal identifying information now, before the Court has ruled on whether Plaintiff is even entitled to know Defendant's identity and before any evidence has been placed in the record that indicates that Defendant illegally downloaded the pornographic films in question, would not only cause irreparable mental harm to Defendant, but also unfairly jeopardize Defendant's reputation in Defendant's community and present employment.

Last, and paramount to all considerations, is the fifth factor.  There is absolutely no risk of unfairness to Plaintiff if the action were to proceed without disclosure of Defendant's personal identifying information at this time unless, of course, it is Plaintiff's intent merely to secure Defendant's personal information for the purpose of shaking down Defendant under threat of litigation.  In particular, Plaintiff will be able to respond fully to Defendant's

forthcoming Motion to Quash without knowing Defendant's identity.  Conversely, Defendant will suffer irreparable harm if forced to disclose her identity before his forthcoming motion to quash is adjudicated because the very information Plaintiff seeks in its subpoena, Defendant's identity, will already be disclosed to Plaintiff.

Despite the Court's recent decision in *Hard Drive Productions, Inc.* requiring Doe Defendants to be identified in their motions, the Defendant's privacy concerns outweigh the vague benefits claimed by Plaintiff.  It follows that upon filing a motion to quash in public record the subpoena is moot.  A conclusion that Defendant has no expectation of privacy simply because Defendant subscribes to the internet through ISPs raises a serious issue because internet service providers will not allow a subscriber to open an account without the subscriber's personal information.  Thus, to avoid undue prejudice, Defendant must be allowed to proceed anonymously.

C. THIS COURT SHOULD RECONSIDER AND VACATE ITS INITIAL ORDER PERMITTING EXPEDITED PRE-SERVICE DISCOVERY AS PLAINTIFF HAS FAILED TO SHOW GOOD CAUSE TO OBTAIN BROAD DISCOVERY

Analogous to the case *Nu Image, Inc. v. Does 1-23,322*, 2011 U.S. Dist. LEXIS 83293, 3 (D.C. Cir. 2011), Plaintiff has failed to show good cause to obtain the broad discovery it seeks and cannot supplement its jurisdictional allegations through discovery.  Plaintiff has alleged that each of the Defendants committed an act of copyright infringement using an IP address which has been traced to a physical address located within the District of Columbia, (Compl. ¶ 16), and as stated previously, "Plaintiff may only use the information disclosed in response to a Rule 45 subpoena served on an ISP for the purpose of protecting and enforcing Plaintiff's rights as set forth in its Complaint." (Doc. No. 5).

With fairly identical facts known at the time the jurisdictional discovery request was made in *VPR Internationale vs. Does 1-1017*, Plaintiff is seeking the use of expedited discovery to wrest quick settlements, possibly from people who have done nothing wrong, without naming a single person in the suit.  Accordingly, the Plaintiff has failed to establish good cause.  Here, the embarrassment of public exposure might be too great, or the legal system too daunting and expensive, for some Doe Defendants to avail themselves to the Court to ask whether Plaintiff has competent evidence to prove its case.

In addition, prior to requesting jurisdictional discovery, Defendant notes that Plaintiff had opportunity and the ability to show good cause for putative defendants residing in the District of Columbia, by utilizing geolocation services[8] readily available to the public, and which indicate the approximate location of an IP address.  If Plaintiff had used geolocation services, the services would have indicated that Defendant's IP address is located in a particular area, which may lead to the discovery of actual defendants, rather than naming Doe defendants without filing a claim against any individual. Plaintiff has not shown that good cause exists and therefore, this Court should vacate its Order permitting Plaintiff pre-service expedited discovery as filed in the District (Doc. No. 6).

D.  DEFENDANTS HAVE BEEN MISJOINED AND SHOULD BE SEVERED AND DISMISSED ACCORDINGLY

Due to the unique and quickly developing nature of BitTorrent protocol cases, and prolific number of contradictory decisions throughout the nation preceding this Court's earlier line of decisions addressing joinder in BitTorrent cases, Defendant now asks this Court to reconsider misjoinder in the present case.

---

[8] See http://whatismyipaddress.com/

1.  Plaintiff Fails to Show that Claims Arise Out of the Same Transaction, Occurrence, or Series of Transactions or Occurrences as Required by Federal R. Civ. Pro. 20(a) for Joinder

Defendant must be severed and dismissed because joinder is improper under Federal R. Civ. Pro. 20(a). The claims against Defendant (as well as those asserted by other Doe Defendants) qualify as a unique case, and are inappropriate to join because each Doe has separate network configuration hardware and varying ISPs, which requires individual investigation and gives rise to separate and individual defenses.

Specifically, Plaintiff has failed to meet requisite elements of joinder under Federal R. Civ. Pro. 20(a). First, in Plaintiff's complaint, Plaintiff erroneously asserts that each defendant is jointly and severally liable for the infringing activities of each other defendant, the infringement complained of was part of a series of transactions, and was accomplished by defendants acting in concert with another. The claim that joinder is proper based on BitTorrent, or other P2P protocols, has been reviewed and almost universally rejected by various Courts. *Supra at* 11-12.

In accordance to the great weight of recent judicial authority throughout the nation, Defendant did not participate in the same transaction or occurrence, or the same series of transactions or occurrences, as the other 10 putative defendants, as required for proper joinder; nor did they in concert with one another. The mere fact that any of the putative defendants may have allegedly clicked on a command to participate in the BitTorrent network does not mean that each, together, was part of the downloading done by multiple individuals. Moreover, even if it were true that all Doe defendants participated in what Plaintiff describes as a "swarm," it cannot be said that each defendant was physically present at the same day and time. To the contrary, Plaintiff's own exhibit attached to the Complaint (Doc. No. 1, Exhibit A) indicates that downloading was done at different times and dates ranging over a month period dating from

19

December 2011 to January 2012.  Plaintiff, therefore, fails to show that claims against each Doe

Defendant arose out of the same transaction, occurrence, or series of transactions or occurrences,

and Defendants must be severed and dismissed.

2.  Even if Plaintiff has Met Requirements Under Federal R. Civ. Pro. 20(a), this Court
    Should Exercise Its Discretion to Sever and Dismiss All Doe Defendants

Even assuming that Plaintiff has, in-fact, met requirements set forth under Federal R. Civ.

Pro. 20(a), the Court should exercise its discretion and sever and dismiss all Doe Defendants.

Permitting joinder of Doe Defendants 1-11 would defeat judicial economy, result in a series of

mini-trials, go against notions of fundamental fairness, and ultimately cause prejudice to

Defendant.

Principally, permitting joinder would defeat the purpose underlying Rule 20(a), judicial

economy, because the court would be unable to efficiently accommodate all 11 defendants and

their attorneys, hold case management conferences, or try all defendants' claims together in a

manner that does not prejudice defendants.  Moreover, service of documents among the parties,

likely to include numerous *pro se* defendants, unaccustomed to D.C. Local Rules and the

Federal Rules of Civil Procedure, and would be nearly impossible to coordinate.  This Court

would also be strained and compelled to address each defendant's unique defenses, thereby

resulting in a series of mini-trials.

Further, joinder does not comport with fundamental fairness and would severely

prejudice defendants.  In an identical case, *Hard Drive Productions v. Does 1-188,* the court

found that permitting joinder was not only impracticable, but would "undermine Rule 20(a)'s

purpose of promoting judicial economy and trial convenience because it would result in a

logistically unmanageable case." 2011 U.S. Dist. LEXIS 94319, 40-41; citing *Bridgeport Music, Inc. v. 11C Music*, 202 F.R.D. 229, 232-33 (M.D. Tenn.) (holding permissive joinder of the putative defendants would not promote judicial economy because the court's courtroom could not accommodate all of the defendants and their attorneys, and therefore could not hold case management conferences and could not try all of plaintiff's claims together).

In a case involving the same Plaintiff as here, *Hard Drive Productions*, Judge Spano correctly identified that:

> [p]ermissive joinder of the Doe Defendants does not comport with the "notions of fundamental fairness," and that it will likely cause prejudice to the putative defendants. The joinder would result in numerous hurdles that would prejudice the defendants. For example, even though they may be separated by many miles and have nothing in common other than the use of BitTorrent, each defendant must serve each other with all pleadings - a significant burden when, as here, many of the defendants will be appearing *pro se* and may not be e-filers. Each defendant would have the right to be at each other defendant's deposition - creating a thoroughly unmanageable situation. The courtroom proceedings would be unworkable - with each of the 188 Does having the opportunity to be present and address the court at each case management conference or other event. Finally, each defendant's defense would, in effect, require a mini-trial. These burdens completely defeat any supposed benefit from the joinder of all Does in this case, and would substantially prejudice defendants and the administration of justice."

2011 U.S. Dist. LEXIS 94319, 40-41. Citing *Coleman v. Quaker Oats Company*, 232 F.3d 1271, 1296 (9th Cir. 2000); citing *Desert Empire Bank v. Insurance Co. of North America*, 623 F.2d 1371, 1375 (9th Cir. 1980) (finding that the district court did not abuse its discretion when it severed certain plaintiff's claims without finding improper joinder)).

These practical concerns, correctly identified by Judge Spano and numerous other Courts that have dauntingly evaluated the logistical hurdles associated that such BitTorrent cases, illustrate that significant prejudice and judicial waste will result absent severance of defendants

by this Court.  This Court should not permit Plaintiff to proceed against all 11 unique and

individual defendants together, and rather, should exercise its discretion to sever and dismiss

defendants.

### E.  PLAINTIFF'S SUBPOENA MUST BE QUASHED

1. Plaintiff s Subpoena Must be Quashed on the Basis of Unreliable IP Addresses and MAC
   Address Tracking Technology

      Plaintiff's subpoena must be quashed because the technology utilized to identify

individual defendants for the alleged copyright infringement is unreliable and is insufficient to

show a volitional act of copyright infringement.[9]  More specifically, there is not only software

capable of impersonating and/or of falsifying ("spoofing") an IP address,[10] but such tracing

software is unreliable because the software is incapable of detecting MAC addresses.

Furthermore, most ISPs do not store MAC address data and they have no ability to detect MAC

addresses that have been falsified.  The technology utilized by Plaintiff to "identify" Defendant

is undoubtedly unreliable, and therefore, Plaintiff is surely incapable of accurately verifying

individuals who download copyrighted material.  Because IP addresses indicated on Plaintiff's

subpoenas are unreliable, the subpoenas cannot be based on such.[11][12]

      Moreover, to prove infringement, a plaintiff must first prove that Defendant copied the

protected work.  *Kelly v. Arriba Soft Corp.*, 336 F.3d 811, 817 (9th Cir. 2003) ("the plaintiff

---

[9] See San Francisco Chronicle Article, "*Porn Granny Update*," http://www.sfgate.com/cgi-bin/article.cgi?f=/c/a/2011/08/30/BUAC1KTB44.DTL&tsp=1&ST=1, describing misidentified Defendant in BiTorrent case.

[10] Common spoofing programs include: http://www.torproject.org; http://proxy.org/cgi-ijroxies.shtml: http://tech-raq.com/proxy

[11] A more through discussion of BitTorrent technology can be found in *Boy Racer, Inc. v. Doe,* 2011 U.S. Dist. LEXIS 92994 (N.D. Cal. Aug. 19, 2011).

[12] Challenges and Directions for Monitoring P2P File Sharing Networks -- or -- Why My Printer Received a DMCA Takedown Notice, Michael Piatek, Tadayoshi Kohno, and Arvind Krishnamurthy, 3rd USENIX Workshop on Hot Topics in Security (HotSec '08), July 2008.

must show ownership of the copyright and copying by the defendant.").  Additionally, Plaintiff

must prove that the copying was a result of a volitional act.  *See Religious Tech. Ctr v. Netcom*

*On-Line Commcn Servs., Inc.*, 907 F. Supp. 1361, 1369-70 (N.D. Cal. 1995).  However,

Plaintiff's allegations are woefully inadequate and do not, and cannot account for numerous

issues, ranging from open wireless networks being illegally invaded, and IP address spoofing, to

human and collection errors.  Courts again have touched on this simple yet utterly logical idea:

*an IP address is not a Copyright Infringer*.  The *VRP* Court correctly identified this legal and

factual disconnect, observing that:

> "[Plaintiff} ignores the fact that IP subscribers are not necessarily copyright infringers.
> Carolyn Thompson writes in an MSNBC article of a raid by federal agents on a home that
> was linked to downloaded child pornography. The identity and location of the subscriber
> were provided by the ISP. The desktop computer, iPhones, and iPads of the homeowner
> and his wife were seized in the raid. Federal agents returned the equipment after
> determining that no one at the home had downloaded the illegal material. Agents
> eventually traced the downloads to a neighbor who had used multiple IP subscribers' Wi-
> Fi connections (including a secure connection from the State University of New
> York)."2011 U.S. Dist. LEXIS 64656, at 3-4.

However, as astutely noted by Judge Baker, "whether you're guilty or not, you look like a

suspect." *Id.* At 5. (*internal citations omitted*).

Plaintiff's alleged IP evidence also fails to provide any evidence of liability under a

theory of contributory infringement.  Specifically, Plaintiff's must show "[o]ne who, with

knowledge of the infringing activity, induces, causes or materially contributes to the infringing

conduct of another." *Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d 259, 264 (9th Cir. 1996)

(citing *Gershwin Publishing Corp. v. Columbia Artists Mgmt., Inc.*, 443 F.2d 1159, 1162 (2d Cir.

1971)). *See generally Newborn v. Yahoo!, Inc.*, 391 F.Supp.2d 181 (D.D.C. 2005).  As a matter

of law, an IP address is not a person under any direct infringement analysis, it is simply logical

by extension that an unreliably harvested IP address fails to allege any knowledge of, of contribution to any infringing activity.

Based on the technological ease with which wholly innocent defendants can be so easily falsely identified – for example when a neighbor or a tenant, unbeknownst to anyone, illegally executing a BitTorrent protocol through a putative defendant's wireless signal, or perhaps a person simply accessing through increasingly popular free public Wi-Fi – coupled with the devastating effect such a false accusation could have, Plaintiff's allegations fail to provide sufficient accuracy, nor a volitional act associated to an account holder sufficient to support its claim, and Plaintiff's subpoena should be quashed.

2. The Subpoena Should Be Quashed to Protect Defendant From Unreasonable Annoyance, Embarrassment, and Oppression.

The subpoena must be quashed to prevent Defendant from suffering unwarranted annoyance, embarrassment, and oppression, or otherwise, suffering an undue burden. *See* Federal R. Civ. Pro. 45(c)(3)(A)(iv). Here, Plaintiff, as part of its for-profit "business model," seeks Defendant's confidential personal identifying information from Defendant's ISP with the goal to annoy and embarrass Defendant, and coerce a quick and profitable settlement under the threat of publicly outing Defendant of illegally downloading pornography, despite scant evidence that Defendant ever engaged in such acts.

Plaintiff's subpoena is *intended* to cause an undue annoyance, embarrassment, and oppression that would result if Defendant's personal identifying information were associated, without sufficient evidentiary support, of illegally downloading pornography. Such association would be highly embarrassing to Defendant, unjustifiably stigmatize Defendant, injure the

Defendant's character and reputation, and jeopardize Defendant's employment.  Moreover, even after Defendant is able to demonstrate that Plaintiff's allegations in this suit are false, the embarrassment and reputational damage from Plaintiff's false public claim will persist. However, by quashing the Plaintiff's subpoena, the Court can prevent Defendant from being unjustly harmed and embarrassed by premature allegations of downloading illegal pornography. Under these circumstances, the subpoena should be quashed.

F.   ALTERNATIVELY, IF THE SUBPOENA IS NOT QUASHED, A PROTECTIVE ORDER SHOULD BE ENTERED PRECLUDING PUBLIC DISCLOSURE OF DEFENDANT S CONFIDENTIAL INFORMATION.

Although the initial Order permitting expedited pre-service discovery (Doc. No. 6) should be vacated, the defendants severed, and the subpoena quashed in its entirety for the reasons set forth above, in the event that the Court denies Defendant's pleas, Defendant respectfully requests that the Court simultaneously enter a Protective Order prohibiting the public disclosure of any confidential information relating to Defendant that is obtained from Defendant's ISP through the subpoena.

If Plaintiff were permitted to make the public accusation it seeks to make, without justification, it would be highly embarrassing to Defendant, indefensibly stigmatize Defendant, injure Defendant's character and reputation, and potentially jeopardize Defendant's employment. Moreover, even after Defendant is able to demonstrate that Plaintiff's allegations in this suit are false, the embarrassment and reputational damage from Plaintiff's false public claim will persist. By entering the requested protective order, however, the Court can prevent Defendant from being unjustly harmed and embarrassed by premature allegations of downloading illegal

pornography without impairing Plaintiff's ability to obtain the requested information and otherwise litigate its case.

Prohibiting public disclosure of Defendant's confidential information is necessary to prevent Defendant from suffering undue annoyance, embarrassment, and oppression that would result if Plaintiff, without sufficient evidentiary support, publicly accuses Defendant of illegally downloading pornography.  In addition, such protection will comport with this Court's role as an impartial adjudicator of legal disputes and not "merely tools for encouraging and exacting settlements from Defendants cowed by the potential costs of litigation and liability." *Righthaven LLC v. Hill*, No. 1:11-cv-00211 (D. Colo. Apr. 7, 2011) (J. Kane).  Such Protective Order furthers an appropriate judicial role in a case like this, and would not prejudice Plaintiff's rights in any way.

Accordingly, if the Court does not quash Plaintiff's defective subpoena, the Court should enter a Protective Order: (A) prohibiting the public disclosure of any information relating to Defendant obtained from Defendant's ISP through Plaintiff's subpoena without Defendant's consent or the Court's prior authorization; and (B) requiring any party filing a pleading in this action that contains or references any information relating to Defendant produced in response to the subpoena to redact that information from the version of the pleading that is publicly filed and file an unredacted version of the pleading with the Court under seal.

V.  CONCLUSION

WHEREFORE, for the above stated reasons, Defendant respectfully requests that the Court permit Defendant to proceed anonymously, vacate its Order permitting expedited pre-service discovery, enter an Order severing Defendants for improper joinder, and quash

Plaintiff's subpoena issued to Defendant's ISP.  In the alternative, if the Court does not quash the subpoena, Defendant respectfully requests that the Court enter a Protective Order prohibiting the public disclosure of any of Defendant's confidential information obtained through the subpoena, including requiring that any pleadings filed in this action that contain such confidential information be redacted or filed under seal.

This, the 16th day of May, 2012.

Respectfully submitted,

S/ Bradford P. Johnson

_____

Bradford P. Johnson, Esq.
D.C. Bar No. 385757
Johnson Law Group Intl., PLLC
1321 Pennsylvania Avenue, SE
Washington, DC 20003
Telephone:     202-544-1515
Fax:                866-446-3240
Email:            bjohnson@jlgi.com

27